| Exhibit 34 Reyes Depo. Vol. II | |
|---|---|

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

Date: July 24, 2012

Respectfully submitted,

JACKSON LEWIS LLP

By: _____
    Kathleen Maylin   Bar # 243829
    Travis Raymond
    Attorneys for Defendant
    SAN FRANCISCO UNIFIED SCHOOL DISTRICT

4830-4426-0624, v. 2

Case No. CV 11-04628 YGR
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# MILLER &
# COMPANY
# REPORTERS

**CERTIFIED
TRANSCRIPT**

UNITED STATES DISTRICT COURT

NORTHER DISTRICT OF CALIFORNIA

MARGARET REYES,                          )
)
       Plaintiff,                      )
)
   v.                                   )
)
SAN FRANCISCO UNIFIED SCHOOL             )
DISTRICT,                                )
)
      Defendant.                      )
-----------------------------------)

SAN FRANCISCO UNIFIED SCHOOL             )
DISTRICT,                                )
)
      Counterclaimant,                )
)
   v.                                   )
)
MARGARET REYES, RICHARD M.               )
ROGERS, THE LAW OFFICE OF                )
RICHARD M. ROGERS, AND DOES 1            )
THROUGH 10, INCLUSIVE,                   )
)
      Counterdefendants.              )
)
-----------------------------------)

DEPOSITION OF: <u>JUNE DAYAO</u>

TAKEN ON:    June 8, 2012

**NO.** 13136     **REPORTED BY:**    JULIE ALFORD
CSR No. 7694

Los Angeles                          San Francisco
800.487.6278

1        "Yes" and "No" is really good.  Nodding your

2   head doesn't work.  The court reporter might take it

3   down, might not.  Grunts are all right.  You know,

4   the court reporter hardly ever gets an "Uh-huh"

15:01:12   5   wrong.  But we prefer "Yes" and "No," and because we

6   do prefer it, I will probably correct you.  So if I'm

7   saying "Say 'Yes,'" it's because you just grunted or

8   nodded your head or something.  All right?

9        If you're uncomfortable, you need a break,

15:01:32   10   let me know.  We're not here to make you

11   uncomfortable.  It's late on Friday; so we are here

12   to get you out of here in as short of time as we can.

13        If you make a mistake and you're still here

14   when you realized you made a mistake, please fix it.

15:01:54   15   You will get a chance to read the transcript in

16   probably three weeks, and you have a duty to make

17   corrections if you got something wrong.  You are

18   under oath.  I'd prefer to get it fixed today.  If I

19   have to follow up on a mistake, I might have to call

15:02:12   20   you back.  I might decide not to call you back.  I

21   might comment about it at trial.  I don't want any of

22   that to happen.  Let's just get it right.  Okay?

23        All right.  Who are you employed by?

24   A.   San Francisco Unified School District.

15:02:26   25   Q.   And how long have you been employed by the

7

1    district?

2         A.   Since 1980.  January 1980.

3         Q.   Okay.  Are you a teacher?

4         A.   I'm a teacher.

15:02:34  5         Q.   What do you teach?

6         A.   I teach special education students.

7         Q.   Okay.  Where do you teach?

8         A.   Hillcrest Elementary School.

9         Q.   And how long have you been at Hillcrest?

15:02:46  10        A.   Since 2005.

11        Q.   Okay.  While you were there, did you meet

12   Margaret Reyes?  She was named Margaret Burns for

13   some of the time?

14        A.   Yes.

15:02:58  15        Q.   Do you recall when you met her?

16        A.   No.

17        Q.   Did you ever have any opportunity to observe

18   her teaching?

19        A.   Yes.

15:03:0B  20        Q.   All right.  And how did that come about?

21        A.   Two of my students are in her classroom.

22        Q.   Okay.  Were these special needs students?

23        A.   They're -- correct.

24        Q.   And how does -- I wasn't there, and I have

15:03:34  25   no idea how it works.

8

1          How does it work?  You're in the classroom

2   for what reason?

3       A.   I pick them up.  I -- it's a pull-out

4   program.  I was the resource specialist program

15:03:46   5   teacher, and I would pull them out.

6       Q.   And bring them back?

7       A.   Yes, and bring them back.

8       Q.   Did you ever stay and observe her teaching?

9       A.   No.

15:03:56   10      Q.   Do you have any impression of her teaching

11  skills?

12      A.   Yes.

13      Q.   What's your impression?

14      A.   Chaotic.

15:04:04   15      Q.   And why do you say that?

16      A.   Because the children are walking about, not

17  in their place.

18      Q.   Were they doing activities that she was

19  directing?

15:04:22   20      A.   No.

21      Q.   Okay.  Were you on the Union Building

22  Committee while she was there?

23      A.   Yes.

24      Q.   And what period of time was that?

15:04:38   25      A.   I don't remember.

9

    1        Q.    2010?   2011?

    2        A.    Maybe -9 -- 2009.

    3        Q.    Okay.  Who else was on the committee?

    4        A.    Phil Miller.

15:05:04  5        Q.    How long were you on the committee?

    6        A.    One year.

    7        Q.    Did Ms. Reyes come up at any point while you

    8   were on the committee?  Was she discussed?

    9        A.    No.

15:05:24 10        Q.    Any complaints about her?

   11        A.    No.

   12        Q.    Were you aware that -- strike that.

   13              Was there any discussion while you were on

   14   the committee about referring her to PAR?

15:05:42 15        A.    No.

   16        Q.    Do you know about any investigation of her

   17   teaching skills?

   18        A.    No.

   19        Q.    Were you aware that there was an

15:05:58 20   investigation of her teaching skills?

   21        A.    No.

   22        Q.    Did you complain to anybody about her

   23   teaching skills?

   24        A.    No.

15:06:06 25        Q.    Did you ever discuss her with anybody?

                                                              10

1    a lawsuit against the school district or Richard or

2    Matthew.

3            MR. ROGERS:  Matthew.  I'm sorry.  You're --

4            THE WITNESS:  Or the administrators.  But

15:24:48   5    she had really an axe to grind with Richard.  They

6    seemed to not -- she does not like him.

7    BY MS. MAYLIN:

8        Q.    Did you understand then that she brought up

9    her last lawsuit in order to say that she was going

15:25:06  10    to do the same with Richard?

11        A.    In a way, but I didn't take her seriously.

12        Q.    Okay.

13        A.    I thought she was kidding.  I never heard of

14    this kind of thing before.

15:25:30  15        Q.    Do you have any information, June, that

16    particularly difficult students were

17    disproportionately placed in Margaret's classroom?

18        A.    That's not true, because we -- we have

19    the -- the grade level team, it's the grade level

15:25:50  20    teachers.  They have to put the children in

21    Post-it's, boy, girl.  And sometimes I have to be

22    involved because I have a different sticker that goes

23    with my students.  And then the most difficult

24    students really go to the ones that are -- who can

15:26:10  25    handle the students.  So it's all -- we use the word

                                                              23

1   we spread the wealth around.

2          So we have to look at the stickers and see

3   which students fit best to which teacher, and that's

4   how we spread the wealth.  It's a very hard-staffed

15:26:3   5   school; so our students are quite tough.

6      Q.   Okay.  So you don't believe that the wealth

7   was spread disproportionately?

8      A.   No, because disproportionately -- there's at

9   least two in every room, in every class that has the

15:26:5   10   potential.  It's either hard to discipline or hard to

11   get the parent to be involved.

12          MS. MAYLIN:  That's all I have.  Thank you.

13

14                   FURTHER EXAMINATION

15:27:06   15   BY MR. ROGERS:

16      Q.   When you do the stickers, is that at the end

17   of the school year?

18      A.   Uh-huh.  We are required to do it and have

19   the list before school ends.

15:27:16   20      Q.   All right.  So, for example, the first grade

21   teachers get together and put the stickers on charts

22   for the next school year for the second grade?

23      A.   Right, and make a list.

24      Q.   All right.  Did Mr. Zapien change the list,

15:27:36   25   the assignments?

24

1

2

3

4

5          I, JULIE ALFORD, Certified Shorthand

6  Reporter, License No. 7694, do hereby certify:

7          That, prior to being examined, the witness

8  named in the foregoing deposition, to wit,

9  JUNE DAYAO, was by me duly sworn to testify the

10 truth, the whole truth and nothing but the truth:

11         That said transcript was taken down by me in

12 shorthand at the time and place therein named and

13 thereafter reduced to computerized transcription

14 under my direction.

15

16         I further certify that I am not interested

17 in the event of the action.

18

19         WITNESS this 26th day of July, 2012.

20

21

22  _____

23              JULIE ALFORD

24

25

                                                   31

# MILLER & COMPANY REPORTERS

CERTIFIED
TRANSCRIPT
CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHER DISTRICT OF CALIFORNIA

MARGARET REYES,                          )
                                         )
              Plaintiff,                 )
                                         )
         v.                              )
                                         )
SAN FRANCISCO UNIFIED SCHOOL             )
DISTRICT,                                )
                                         )
              Defendant.                 )
-----------------------------------)

SAN FRANCISCO UNIFIED SCHOOL             )
DISTRICT,                                )
                                         )
              Counterclaimant,           )
                                         )
         v.                              )
                                         )
MARGARET REYES, RICHARD M.               )
ROGERS, THE LAW OFFICE OF                )
RICHARD M. ROGERS, AND DOES 1            )
THROUGH 10, INCLUSIVE,                   )
                                         )
              Counterdefendants.         )
                                         )
-----------------------------------)

DEPOSITION OF: VICTORIA GONZALEZ

TAKEN ON:     June 5, 2012

CONFIDENTIAL TRANSCRIPT

NO. 13135     REPORTED BY:     JULIE ALFORD
                              CSR No. 7694

Los Angeles                    San Francisco
              800.487.6278

```
 1        Q.   I see.  Okay.  How did you -- well, strike
 2   that.
 3             How does the PAR program work?
 4             MR. RAYMOND:  Objection.  Vague and
 5   ambiguous.
 6             You can answer if you know.
 7             THE WITNESS:  The PAR program, it's very --
 8   this could be a very lengthy answer.
 9             Basically --
10             MR. RAYMOND:  I'm sorry.  I'll also object
11   it calls for a narrative.
12             Go ahead.
13             MR. ROGERS:  It calls for an explanation,
14   actually.
15        Q.   But go ahead.
16        A.   Okay.  The peer assistance and review
17   program was agreed upon in our teacher contract with
18   UESF, our union, and San Francisco Unified School
19   District, and the contract that is now in process of
20   being renegotiated -- it's in Article 40, I think,
21   41.  It explains the parameters of the peer
22   assistance and review program and the process by
23   where one ends up in peer assistance and review.
24             Would you like me to continue?
25        Q.   Yeah.  From your perspective -- we've got to
```

11

1      evaluations?

2          A.    Yes.

3          Q.    All right.   Is there another way to get in?

4          A.    The other way to get into PAR is through a

10:13:18  5  UBC -- which is Union Building Committee -- UBC

6      referral.

7          Q.    UBC means there's some committee that

8      represents the school, the teachers?

9          A.    You're on your school site.   Your union

10:13:3   10  building committee.   It depends on numbers, because I

11     was on it at my school site, off and on.   We had our

12     person who was -- and I forget the title of the

13     person who's the -- who's basically our

14     representative, our school representative who attends

10:13:5   15  the meetings.   And then there's a group of us that

16     were elected to be part of the union building

17     committee.   And ideally you would try to cover all

18     bases.   You'd have PAR professionals and -- and

19     because that's part of our union and a variety of

10:14:1   20  people.

21              And the UBC meets -- we met every week, but

22     we were very active and had open meetings.   So my

23     case was a little different.   But the UBC, for

24     example, might talk about procedures.   If there's

10:14:3   25  something that they feel needs to be worked on in the

16

1    school.  It's a real mixed bag.  It might be ways

2    that we can improve our own classroom climate, but --

3    or if there's a grievance, if somebody is displeased

4    with something that's going on in the school.  So it

5    is our -- our organization.  Okay.

6        Q.   What's your -- well, strike that.

7             Have you been on a UBC where you referred

8    somebody to PAR?

9        A.   No.

10       Q.   Okay.  Do you know -- do you actually know

11   how that works?

12       A.   Yes, I do.

13       Q.   Okay.  How does it work?

14       A.   As far as I understand, because I -- because

15   I -- they gave us -- when we started in PAR, they

16   gave us a lot of training and things like that, and

17   I've seen a referral.

18            Basically the UBC will submit this referral,

19   and it has -- I had one for somebody a few years ago,

20   and it was very -- it was very sketchy.  Okay.  It

21   just had a -- something about -- there were concerns

22   about this particular teacher's --

23            MR. RAYMOND:  I'm going to stop you for a

24   second.

25            For PAR program stuff, we want to be on the

17

1    teachers and -- yeah, four classroom teachers and

2    administrators and Dennis and Mary.

3    BY MR. ROGERS:

4        Q.   Okay.  Voluntary PAR, what's the difference?

10:23:24   5        A.   Okay.  Voluntary PAR actually started the

6    first year I was a PAR coach.  It was developed as a

7    way to provide help to teachers that had received

8    satisfactory evaluations, but needed some help.  For

9    example, a teacher moving -- and this is used in our

10:23:5    10   little brochure, which is new -- a teacher moving to

11   a different school, a teacher changing grade level,

12   changing subject, a teacher wanting to try out some

13   new project.

14        So it was developed to kind of destigmafy

10:24:1    15   PAR, that there are other things that we do in

16   teacher support and development.  People don't

17   realize that we also -- under our program we also

18   have connections to national board certification, my

19   intern program, teacher academy.  We have a variety

10:24:3    20   of things, not just peer assistance and review.

21   Parent/teacher programs.  So it was also to show that

22   we do a variety of things besides PAR and to provide

23   those services that could theoretically help a

24   teacher that might have a rough go.  For example,

10:24:5    25   changing grade level can be extremely challenging.

24

1          So it was a period of no more than two
2   months and tailored support.  So that's what it
3   started out to be.  And it's no longer called v PAR.
4          MR. RAYMOND:  Can we take a really short
10:25:08   5   break?
6          MR. ROGERS:  All right.
7          (A brief recess was taken.)
8          MR. ROGERS:  I assume you had to go to the
9   bathroom.  I don't want you taking short breaks to
10:26:10   10   coach.  So if you need it for that, please let me
11   know.
12      Q.  You mentioned national board certification.
13   What's that?
14      A.  That's a process by which teachers do an
10:26:34   15   extensive -- I'm not the one that coordinates that.
16   But they -- it's like a huge project.  They videotape
17   and analyze their work they reflect, and they submit
18   a variety of documentation to be certified at the
19   national board.
10:26:58   20      Q.  When you get certification, does it impact
21   your pay level?
22          MR. RAYMOND:  Objection.  Calls for
23   speculation.
24          THE WITNESS:  The school district -- can I
10:27:10   25   answer?  Well, as far as I understand --

                                                        25

1    know about it?

2         A.   Because we're coaches and we meet together.

3         Q.   Okay.

4         A.   Yeah.

10:55:12  5         Q.   So, in your opinion, is that the total

6    number of teachers he's referred to PAR?

7              MR. RAYMOND:  Objection.  Calls for

8    speculation.

9              THE WITNESS:  He would not refer them to

10:55:2  10   PAR.  He would -- the evaluations would be reviewed

11   to see if they qualified for PAR.

12   BY MR. ROGERS:

13        Q.   Or there could be the UBC?

14        A.   Or the UBC.

10:55:36  15        Q.   And you don't know how that worked?

16             MR. RAYMOND:  Objection.  Vague and

17   ambiguous.

18   BY MR. ROGERS:

19        Q.   Do you know whether they were UBC or

10:55:42  20   evaluation referrals?

21        A.   It was a UBC referral.

22        Q.   For all three?

23        A.   No.  I don't know on the others.  No.

24        Q.   That's what I meant.

10:55:50  25        A.   No, I do not know.

46

1    of the PAR referral and how it would impact her

2    attempt to get pregnant?

3        A.   No.

4        Q.   Okay.  So the third visit, what did you do?

11:36:16  5        A.   It was fairly short because it was kind of

6    checking in.  I think that she was getting the music

7    program.  It was more like just a friendly visit.  I

8    don't recall that -- she was feeling -- I remember

9    she -- I -- that she -- I got some feeling that she

11:36:52  10   was feeling positive about being at Lawton.  We

11   talked about what a nice school it was.  But it was

12   not -- I don't recall it being a very long meeting.

13       Q.   What was your assessment of Ms. Reyes?

14            MR. RAYMOND:  Objection.  Vague and

11:37:08  15   ambiguous.  Misstates testimony about assessment.

16            THE WITNESS:  Okay.  V PAR is not

17   assessment.

18   BY MR. ROGERS:

19       Q.   I'm sorry.  What was your assessment.  Not

11:37:18  20   formal.  What was your assessment?

21       A.   I --

22            MR. RAYMOND:  Same objections.

23            THE WITNESS:  I can't assess someone -- or I

24   can't make any kind of ideas about someone unless

11:37:28  25   I've observed the classroom, observed the teaching,

77

1  meeting after two or three meetings where we're

2  talking of a variety of things, I have -- I cannot

3  assess, nor is that my job.

4  BY MR. ROGERS:

11:37:52  5      Q.   Did you form an impression of her competence

6  as a teacher from what you observed?

7           MR. RAYMOND:  Objection.  Calls for

8  speculation.

9           THE WITNESS:  No, because I saw her

11:38:06 10 classroom.  I didn't see her with children, and

11 that's not my job as a v PAR.

12 BY MR. ROGERS:

13      Q.   Your last visit with her was October 4th,

14 2011 --

11:38:28 15     A.   Uh-huh.

16      Q.   -- according to Exhibit 4; right?  That

17 should be the one on top.

18           MR. RAYMOND:  Objection.  The exhibit speaks

19 for itself.

11:38:48 20           MR. ROGERS:  Yeah, but who knows whether

21 it's lying or not.

22      Q.   Is it your best memory that your last visit

23 with her was October 4, 2011?

24      A.   It would have been around that period of

11:39:02 25 time, yes.

78

1

2

3

4

5        I, JULIE ALFORD, Certified Shorthand

6  Reporter, License No. 7694, do hereby certify:

7        That, prior to being examined, the witness

8  named in the foregoing deposition, to wit,

9  VICTORIA GONZALEZ, was by me duly sworn to testify

10  the truth, the whole truth and nothing but the truth:

11        That said transcript was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced to computerized transcription

14  under my direction.

15

16        I further certify that I am not interested

17  in the event of the action.

18

19        WITNESS this 22nd day of June, 2012.

20

21

22  _____

23              JULIE ALFORD

24

25

                                                    89

Margaret Reyes v. San Francisco Unified School District                                Jessica Hobbs-Alvarez

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3

4    MARGARET REYES,

5              Plaintiff,

6      Vs.                            No. C11-04628 YGR [ECF]

7    SAN FRANCISCO UNIFIED SCHOOL
     DISTRICT,

8

9              Defendant.
     _____/

10

11

12              DEPOSITION OF:  JESSICA HOBBS-ALVAREZ

13              TAKEN ON:       JUNE 29, 2012

14

15

16

17

18

19

20      2-13154                      ERIN SHANNON

21                                   CSR No. 11355

22

23

24

25

                                                                1

```
 1   please fix it.
 2        A.  Okay.
 3        Q.  Okay?  It's important.
 4            What else can I tell you?
 5            We use "I am sure" to mean we are guessing,
 6   so if you hear yourself saying "I am sure," you might
 7   want to self-edit.  You can say "I am sure" if you
 8   want.  It will look like certainty on the record.
 9        A.  Okay.
10        Q.  All right.  Who are you employed by?
11        A.  San Francisco Unified School District.
12        Q.  How long have you been so employed?
13        A.  Five years.
14        Q.  Okay.  Where were you employed prior to San
15   Francisco Unified School District?
16        A.  I worked at Zazie Restaurant in San
17   Francisco.
18        Q.  Okay.  How old are you?
19        A.  32 years old.
20        Q.  Okay.  When did you get your -- I can't
21   talk.  Sorry.  It's Friday.
22            When did you get your teaching credential?
23        A.  Let's see.  2008.
24        Q.  Approximately five years ago?
25        A.  Yes.
```

Timestamps:
14:11:37 — line 5
14:11:50 — line 10
14:12:03 — line 15
14:12:13 — line 20
14:12:26 — line 25

7

Margaret Reyes v. San Francisco Unified School District                    Jessica Hobbs-Alvarez

1          Q.   Okay.  All right.   Where was your first job

2    as a teacher?

3          A.   Hillcrest Elementary.

4          Q.   Okay.  All right.   Your name is

14:12:38    5    Hobbs-Alvarez?

6          A.   (Nods head.)

7          Q.   When -- when was it Hobbs?

8          A.   Very recently, up until very recently, and

9    on all of my district documents it still says

14:12:49   10    "Jessica Hobbs," but on a few other documents it has

11    my additional last name.

12          Q.   Okay.  So when were you -- so you were

13    married?

14          A.   Yes.

14:12:56   15          Q.   When was that?

16          A.   What does that have anything to do with

17    this?

18          Q.   The last year?  I am just trying to find

19    out --

14:13:03   20          A.   Okay.

21          Q.   -- because we have different names.

22          A.   Okay.  Yes.  I was -- well, I have been

23    married for almost four years but just recently

24    changed my name last year.

14:13:14   25          Q.   All right.  Okay.

8

Margaret Reyes v. San Francisco Unified School District                    Jessica Hobbs-Alvarez

1      Q.   Do you have any recollection of giving this

2  email to Mr. Zapien?

3      A.   No.

4      Q.   You were the UBC representative at the time?

14:18:09   5      A.   Yes.

6      Q.   Okay.

7      A.   I mean, if this was -- this was in 2010,

8  yeah, so I have been the UBC rep for two years so

9  last school year and then the school year before

14:18:21   10  that.

11      Q.   So 2011 to 2010?

12      A.   Uh-huh, yes.

13      Q.   2011 to 2012?

14      A.   So yes.  I was the UBC rep.

14:18:32   15      Q.   Okay.  Do you have any recollection of

16  talking to Mr. Zapien about this email?

17      A.   No.

18      Q.   Let me do it from the other side.  Do you

19  have any reason to doubt that you showed this email

14:18:44   20  to Zapien?

21            MR. RAYMOND:  Objection.  Misstates

22  testimony.  Calls for speculation.

23            THE WITNESS:  I -- like I said before, the

24  same thing stands what I said before.  I don't remember

14:18:55   25  talking to Mr. Zapien about this email.

11

Margaret Reyes v. San Francisco Unified School District                    Jessica Hobbs-Alvarez

```
          1          A.   I don't remember.

          2          Q.   What were you -- what were your duties at

          3   the time in terms of teaching?  Which grade?

          4          A.   2010.  So I was a kindergarten teacher.

14:23:20  5          Q.   Okay.  Was your classroom anywhere near Ms.

          6   Reyes' bungalow?

          7          A.   No.  Because the bungalows are outside, and

          8   I was -- no.

          9                 (Discussion off the record.)

14:23:37  10  BY MR. ROGERS:

          11         Q.   What are your duties as a -- what is it

          12  called?  A UBC representative?

          13         A.   I am a union representative -- building

          14  representative for --

14:24:00  15         Q.   Okay.  And the other letters, they refer to

          16  the union representative.  Is that a dual role?

          17         A.   No.  I am the elected representative.  I am

          18  elected by the staff, and I am the representative for

          19  Hillcrest Elementary to the union.  But I would --

14:24:18  20  it's one role.  I mean, there are many parts to it,

          21  but it's one.

          22         Q.   Okay.  What are your duties as the

          23  representative?

          24         A.   My duties are to facilitate and lead the

14:24:30  25  monthly UBC meetings at Hillcrest at the school, also
```

16

Margaret Reyes v. San Francisco Unified School District                                Jessica Hobbs-Alvarez

 1    to attend the monthly meetings, the monthly assembly

 2    meetings, also to be -- to help members with issues

 3    about the contract, and yeah, the contract, mostly

 4    around the contract.

14:24:58   5        Q.  Okay.  Do you have anything to do with the

 6    school's budget?

 7                MR. RAYMOND:  Objection.  Vague and

 8    ambiguous.

 9                THE WITNESS:  The UBC has a role in the SCC

14:25:16  10    which determines part of the budget.

       BY MR. ROGERS:

12        Q.  What is the "SCC"?

13        A.  The School Site Council.

14        Q.  Okay.  Which part of the budget does the SCC

14:25:28  15    participate in?

16        A.  Title I funds.

17        Q.  What's that?  Special needs?

18        A.  They are just -- they are -- I mean, I am

19    not clear on all of the parts of the budget, but

14:25:44  20    there are a certain number of, like, funds that go

21    toward specific things.  That's all I can tell you.

22        Q.  Okay.  What are your duties with respect to

23    PAR?

24        A.  It is my responsibility to facilitate

14:26:07  25    recommendations to the PAR program.

                                                                        17

Miller & Company Reporters                    (415) 956-6405 - (310) 322-7700 - (800) 487-6278
                                www.millerreporters.com

1        I, ERIN SHANNON, Certified Shorthand Reporter,

2   License No. 11355, do hereby certify:

3        That, prior to being examined, the witness named

4   in the foregoing deposition, to wit, JESSICA

5   HOBBS-ALVAREZ, was by me duly sworn to testify the

6   truth, the whole truth and nothing but the truth:

7        That said transcript was taken down by me in

8   shorthand at the time and place therein named and

9   thereafter reduced to computerized transcription under

10  my direction.

11       I further certify that I am not interested in the

12  event of the action.

13

14       WITNESS this 13th day of July, 2012.

15

16  _____

17       ERIN SHANNON, CSR NO. 11355

18

19

20

21

22

23

24

25

                                                    63