UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARGARET REYES,

     Plaintiff,

     vs.

SAN FRANCISCO UNIFIED SCHOOL
DISTRICT,

     Defendant.

Case No.: 11-cv-04628-YGR

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT OF PLAINTIFF'S COMPLAINT
(DKT. NO. 95); DENYING CROSS-MOTIONS ON
THE COUNTERCLAIM (DKT. NOS. 75 & 80);
AND DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION (DKT. NO. 142)**

Pending before the Court are three summary judgment motions and a motion for
reconsideration of a denial on a motion to file documents under seal.  Plaintiff Margaret Reyes
("Plaintiff") filed an employment discrimination, retaliation, and breach of contract action against
Defendant San Francisco Unified School District ("Defendant" or the "District") on September 19,
2011.  Plaintiff alleges eight claims against Defendant: (1) Title VII gender discrimination; (2) Title
VII religious discrimination; (3) Title VII retaliation; (4) FEHA age discrimination; (5) FEHA gender
discrimination; (6) FEHA religious discrimination; (7) FEHA retaliation; and (8) breach of the
settlement agreement.  (Dkt. No. 1 ("Compl.").)  Plaintiff seeks exemplary and punitive damages.
(Compl. at Prayer ¶ 3.)

On November 18, 2011, Defendant filed a Counterclaim for Damages and Equitable Relief.
(Dkt. No. 7 ("Counterclaim").)  The Counterclaim alleges claims for: (1) breach of contract; (2)
breach of the covenant of good faith and fair dealing; and (3) equitable relief.  The first and second
claims are asserted against: (i) Plaintiff Margaret Reyes; (ii) Plaintiff's counsel, Richard M. Rogers
("Rogers"); and (iii) the Law Office of Richard M. Rogers (collectively, "Counter-Defendants").

United States District Court
Northern District of California

United States District Court
Northern District of California

As to the Complaint, Defendant filed a Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint on July 24, 2012. (Dkt. No. 95 ("Motion" or "Mot.").) On August 7, 2012, Plaintiff filed her Opposition to Defendant's Motion for Summary Judgment. (Dkt. No. 122 ("Opposition" or "Opp.").) Defendant filed its Reply in Support of Its Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint on August 14, 2012. (Dkt. No. 139 ("Reply").) On August 28, 2012, the Court held oral argument on the Motion. (Dkt. No. 148.)

Cross-motions for summary judgment have been filed as to the Counterclaim ("Cross-Motions"). The Court ordered simultaneous opening and responsive briefs. On July 10, 2012, Plaintiff filed a Motion for Summary Adjudication of the Counterclaim (Dkt. No. 75 ("Plaintiff's Cross-Motion")) and the District filed a Motion for Summary Judgment of the Counterclaim (Dkt. No. 80 ("District's Cross-Motion")). Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment of the Counterclaim on July 17, 2012. (Dkt. No. 84 ("Plaintiff's Response to Cross-Motion").) On that same day, the District filed its Reply Brief in Support of Counterclaimants' Motion for Summary Judgment of Counterclaim. (Dkt. No. 85 ("District's Response to Cross-Motion").) The Court held oral argument on the Cross-Motions on July 31, 2012. (Dkt. No. 119.)

Also pending before the Court is Defendant's Motion for Reconsideration of the Court's Order Denying Plaintiff's Motion to File under Seal Deposition Transcripts and Documents in Opposition to Defendant's Motion for Summary Judgment. (Dkt. No. 142 ("Motion for Reconsideration").) This Motion for Reconsideration initially sought leave of Court to file said motion. The Court deemed the request for leave to be Defendant's Motion for Reconsideration and ordered Plaintiff to file a response on the issue of attorney-client privilege/waiver. (Dkt. No. 143.) Plaintiff filed her Opposition to Defendant's Motion for Reconsideration on August 23, 2012 (Dkt. No. 145), and Defendant filed its Reply Brief in Support of its Motion for Reconsideration on August 24, 2012 (Dkt. No. 147).

Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel, and for the reasons set forth below, the Court hereby:

- **GRANTS** Defendant's Motion for Summary Judgment of Plaintiff's Complaint as to all the claims of discrimination, namely the first, second, fourth, fifth, and sixth claims;

- **GRANTS IN PART AND DENIES IN PART** Defendant's Motion as to the third and seventh claims for retaliation;

- **GRANTS** Defendant's Motion as to the eighth claim for breach of contract;

- **GRANTS** Defendant's Motion as to punitive damages;

- **DENIES** the Cross-Motions on the Counterclaim; and

- **DENIES** Defendant's Motion for Reconsideration.

## I. OVERVIEW

### A. Background

Plaintiff is a current teacher employed by the District. (District's Reply to Plaintiff's Response to Defendant's Amended Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Dkt. No. 139-1 ("RSS")) No. 7.)[1] Plaintiff filed a prior lawsuit against the District in or around June 2005 ("Prior Lawsuit"). (Declaration of Richard M. Rogers in Support of Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 128 ("Rogers Decl.")), Ex. 15 (Dkt. No. 137-2).) The Prior Lawsuit alleged claims for discrimination based on gender and religion. In addition to the District, Plaintiff named Allen Lee, principal of Plaintiff's former school, as an individual defendant. (*Id.*) Plaintiff, the District, and Mr. Lee entered into a settlement agreement resolving the Prior Lawsuit in November 2006 ("Settlement Agreement" or "Settlement"). (RSS No. 27.) Among other things, the District agreed to pay Plaintiff a sum of money, to grant her seven additional sick days, and to change her seniority date to August 21, 2002. (Reyes Dep., Ex. 34 (Settlement Agreement) §§ 1 & 3.)[2] Plaintiff worked at Hillcrest Elementary School from approximately June 2005 until she voluntarily left Hillcrest (or was "consolidated") in

---

[1] Unless otherwise noted, the references to the material fact nos. include the evidence supporting the same.

[2] The parties have separately attached excerpts of each volume of Plaintiff's deposition transcripts in support of their briefs. (Amended Declaration of Travis Raymond in Support of Defendant San Francisco Unified School District's Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint (Dkt. No. 115 ("Raymond Decl.")) at Exs. H (Vol. I), I (Vol. II) & J (Vol. III) (Dkt. Nos. 115-7, 115-8 & 115-9, respectively); *see* Rogers Decl. at Ex. 5, jointly combining Vols. I, II & III (Dkt. Nos. 129–133); *see also* Supplemental Declaration of Richard M. Rogers re Plaintiff's Motion to File Under Seal Deposition Transcripts and Documents in Opposition to Defendant's Motion for Summary Judgment at Ex. 1 (Dkt. Nos. 144–144-1).) For ease of reference in this Order, the Court will refer to Plaintiff's deposition transcripts as "Reyes Dep. (Vol. #) page:line" or "Reyes Dep., Ex. #."

April 2011 for a position at Lawton Alternative School ("Lawton").  (RSS No. 85; Reyes Dep. (Vol. I) 17:17–20.)  Richard Zapien ("Zapien") has been principal of Hillcrest since 2007 and was Plaintiff's direct supervisor while there.  (RSS No. 7.)  He has been employed by the District since 1993 and started as a substitute teacher.  (*Id.*)

During her time at Hillcrest, Plaintiff alleges that numerous retaliatory and discriminatory actions have been taken against her because of the Prior Lawsuit.  In Plaintiff's counsel's own words: "[t]he real issue is the retaliation claim."  (Opp. at 1.)  Plaintiff asserts there are simply too many acts and omissions to accept the District's claimed defense of negligence or non-deliberate conduct as it relates to Plaintiff's employment.  In particular, Plaintiff alleges that Angie Sagastume, Executive Director for Certified Recruitment and Staffing in the Human Resources ("HR") Department ("Sagastume"), retaliated against Plaintiff on behalf of the District's Central Office.  (RSS No. 6; Opp. at 2.)  Sagastume has worked in the HR Department since 1997.  (RSS No. 6.)  Her alleged actions fall into two categories: (i) acts relating to the Settlement Agreement; and (ii) acts in response to Plaintiff's application for a job posting at Lawton.  In addition, Plaintiff claims that the District's filing of the Counterclaim itself is retaliatory.

On June 1, 2011, Plaintiff filed a Charge of Discrimination with the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission ("Charge").  (Declaration of Margaret Reyes in Support of Opposition to Defendant's Motion for Summary Judgment ("Reyes Decl.") (Dkt. No. 125) ¶ 3 & Ex. 1; *see* attachment to Compl.)  Plaintiff checked the boxes for retaliation and discrimination based on age, sex, and religion.  She provided an attachment that contained the bases of her claims.

**B.      Legal Standard for Motion for Summary Judgment Under Fed. R. Civ. P. 56**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

United States District Court

Northern District of California

United States District Court
Northern District of California

1  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of *some* alleged factual dispute between

2  the parties will not defeat an otherwise properly supported motion for summary judgment; the

3  requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48 (dispute as to a material

4  fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-

5  moving party).

6          Where the moving party will have the burden of proof at trial, it must affirmatively

7  demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v.*

8  *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the non-moving party will

9  bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district

10 court that the non-moving party lacks evidence to support its case.  *Id.*  If the moving party meets its

11 initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial

12 in order to defeat the motion.  *Id.* (quoting *Anderson*, 477 U.S. at 250).  The opposing party's

13 evidence must be more than "merely colorable" but must be "significantly probative."  *Id.* at 249–50.

14 Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but

15 instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.

16 *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v.*

17 *Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation

18 do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th

19 Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants']

20 summary judgment motion").

21          When deciding a summary judgment motion, a court must view the evidence in the light most

22 favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S.

23 at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  However, in determining

24 whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a

25 genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal

26 quotations omitted).  Rather, a court is entitled to "rely on the nonmoving party to identify with

27 reasonable particularity the evidence that precludes summary judgment."  *See id.*; *Carmen v. San*

28 *Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not

examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set

forth in the opposing papers with adequate references so that it could conveniently be found.")

**II.     Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint**

     **A.      Motion for Reconsideration**

     The Court first addresses the Motion for Reconsideration because it bears on a piece of

evidence upon which Plaintiff relies in her Opposition.  Plaintiff filed a motion to file documents

under seal with her Opposition (Dkt. No. 138), to which Defendant, as the party who had designated

the underlying documents "confidential," had the burden of establishing should be sealed.  When

Defendant failed to respond as required by the Court's Local Rules, the Court ordered that the

documents be publicly-filed.  (Dkt. No. 141.)  Thereafter, Defendant filed its Motion for

Reconsideration on the grounds of privilege.  Only one email is at issue in the Motion for

Reconsideration.

     The proponent of a privilege must make a timely objection to the disclosure of a privileged

communication.  Failure to object may constitute a waiver of the privilege.  *See* 24 Charles Alan

Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5507 (1st ed.); *Gomez v.

Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001) ("privilege [will be deemed] to be waived if the

privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged

matter") (quoting *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992)) (alteration in

original).  On the issue of inadvertence, the Court notes the contrast between a case where document

production involves only a few documents versus one where millions of documents are at issue.  *Cf.

Datel Holdings Ltd. v. Microsoft Corp.*, C-09-05535 EDL, 2011 WL 866993, at *4 (N.D. Cal. Mar.

11, 2011).

     At issue is an email sent by Mike Quinn ("Quinn"), Senior Deputy Counsel for the District, to

L. Julius M. Turman ("Turman"), outside legal counsel for the District, and Angie Sagastume of

Human Resources.  (Motion for Reconsideration at 4.)  The District contends the email is clearly

labeled as privileged, both as an attorney-client communication and attorney work product.  (*Id.*)  It

further contends that the email requests legal advice from outside counsel and provides advice to

Sagastume regarding the District's compliance with its contractual obligations.  (*Id.*)  But for the

1   District's counsel's negligence, Defendant argues that the email would "certainly" have been sealed as

2   it is protected by the attorney-client privilege.  (*Id.*)

3        In Plaintiff's Opposition to Defendant's Motion for Reconsideration ("Reconsideration

4   Opposition"), she asserts that privilege has been waived.  Plaintiff first obtained this email when she

5   reviewed her personnel file.  Rogers sent a copy of the email to Turman himself on April 21, 2011.

6   (Reconsideration Opposition at 1; Declaration of Richard M. Rogers in Support of Plaintiff's

7   Opposition to Defendant's Motion for Reconsideration (Dkt. No. 146 ("Rogers Reconsideration

8   Decl.")) ¶ 2.)  Rogers also produced a copy of the email with Plaintiff's Initial Disclosures on

9   December 28, 2011.  (Rogers Reconsideration Decl. ¶ 3.)  Defendant asserted its objection based on

10  privilege on or about May 7, 2012, which was followed by a meet and confer process.  (*Id.* ¶ 4.)  The

11  privilege issue was not raised again until the Motion for Reconsideration.  Based on this conduct,

12  Plaintiff asserts that privilege was waived when the document was placed deliberately in her

13  personnel file to which others had access and again when Defendant failed to assert privilege with its

14  Reply.  (Reconsideration Opposition at 1–2.)

15       In the Reply Brief in Support of its Motion for Reconsideration ("Reconsideration Reply"), the

16  District asserts that Fed. R. Evid. 502 applies because this was an inadvertent disclosure, and that such

17  disclosure does not waive privilege if (1) it was inadvertent, (2) the District took reasonable steps to

18  prevent disclosure, and (3) the District promptly took reasonable steps to rectify the error.

19  (Reconsideration Reply at 1.)  The District does not dispute the chain of events as detailed by Rogers

20  in his declaration, but it emphasizes that it took reasonable steps to maintain confidentiality by

21  marking the email confidential and demanding its return from Plaintiff.  (*Id.* at 3.)  In addition, the

22  District "took the reasonable step of designating the email confidential under the protective order

23  issued in this case, and the parties have treated it as confidential ever since.  No further action

24  appeared necessary until the District had notice Plaintiff would raise the Quinn email in its

25  opposition."  (*Id.* at 3.)  It has also removed the email from Plaintiff's personnel file, but Defendant

26  did not advise the Court as to the timing of the removal.

27       The Court finds that the District has waived privilege on this email at least two times and

28  possibly as many as six times.  Assuming for the moment that the disclosure was inadvertent, the

United States District Court

Northern District of California

District does not dispute that Plaintiff sent the email to Turman in April 2011, nor that Plaintiff produced it with her initial disclosures in December 2011.  The District's failure to object in each instance constitutes two waivers.  The Court believes that the District again waived privilege by taking no additional action and relying on its designation of the email as "confidential" under the protective order.  The District should have initiated the discovery dispute process to demand return of the privileged document.  A designation of "confidential" had no bearing on the privilege assertion. Moreover, the District did not object to Plaintiff's use of the email when it filed its Reply *and* failed to respond to the motion to file documents under seal.  Finally, the email was placed in Plaintiff's personnel file, readily available to anyone handling the file.

Plaintiff has failed to act reasonably or promptly under Fed. R. Evid. 502 or with any diligence whatsoever to protect any privilege that may have existed in the email.  The District should have been able to easily ascertain the privilege issue in April or December 2011.  It did not do anything to protect the document until August 2012.

For the foregoing reasons, the Court **DENIES** the District's Motion for Reconsideration.  The document at issue should be publicly-filed by Plaintiff such that the public record in this matter is complete.

> **B.      Discrimination Claims: Claims One, Two, Four, Five, and Six**

>> **1.      Legal Standard for Discrimination Claims Under Title VII and FEHA**

A plaintiff must establish a prima facie case of disparate treatment discrimination by showing that: (1) she belongs to a protected class; (2) she was performing her job satisfactorily (or was qualified for a position for which he applied); (3) she was subject to an adverse employment action[3]; and (4) similarly-situated individuals outside of her protected class were treated more favorably.[4]  *Chuang v. University of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000); *see Aragon v. Republic Silver*

---

[3] An adverse employment action must materially affect the "terms, conditions, or privileges of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005).

[4] The same burden-shifting analysis is applied in FEHA cases. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354–55 (2000); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  California courts also look to federal anti-discrimination law as an aid in interpreting analogous state law provisions.  *Guz*, 24 Cal. 4th at 354

United States District Court
Northern District of California

*State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).  Employees "are similarly situated when they have similar jobs and display similar conduct."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).  "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a *determinative influence* on the outcome."  *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) (emphasis supplied).

   In general, discrimination can be established in either of two ways—by direct evidence or by indirect evidence.  *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985).  Direct evidence is that which, if believed, proves the fact of discriminatory animus "without inference or presumption." *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal citations omitted).  A plaintiff may prove discrimination by using indirect, or circumstantial evidence, under the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 807 (1973).

   If a plaintiff succeeds in establishing a prima facie case (step one), the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action (step two).  If the defendant does so, the plaintiff moves to step three to demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Aragon*, 292 F.3d at 658–59 (internal quotations and citations omitted); *Godwin*, 150 F.3d at 1220.

   To establish pretext under step three, very little direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial."  *Id.* at 1222; *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment action or relying solely on plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) ("a plaintiff cannot defeat summary judgment simply by making out a prima facie case" to show pretext

United States District Court
Northern District of California

9

or "deny[ing] the credibility of the [defendant's] witnesses") (internal citations omitted) (second alteration in original).

## 2.     Gender Discrimination: Claims One and Five

The extent of Plaintiff's gender discrimination claims is as follows: in March 2011, Plaintiff's co-worker referred to a female employee as a "nasty skank." (RSS No. 17; Reyes Dep. (Vol. II) 224:17–225:6.) Plaintiff testified that principal Zapien laughed at the comment. (Reyes Dep. 225:13–17.) Plaintiff identified no other specific instance from her time at Hillcrest where an administrator or supervisor treated her negatively because of gender. (*Id.* 226:10–15.)

Defendant argues that Plaintiff cannot establish a prima face case of gender discrimination because she was not subject to an adverse action based on gender nor can she show any causal connection between her status as a female and any adverse action. (Mot. at 11– 13.) Defendant contends the comment is merely a "stray remark" which is not actionable as a matter of law because it did not create a materially adverse change in her employment terms. (Mot. at 12.)

Without citation to any authority, Plaintiff responds that both her gender and religious discrimination claims pass "the 'but for' test" because she complained of those types of discrimination in the Prior Lawsuit.[5] (Opp. at 8 ("If she had not complained of gender and religion discrimination [in the Prior Lawsuit], she would not have suffered retaliation.").) Plaintiff does not specifically address the skank comment identified by Defendant, nor Defendant's arguments regarding a lack of connection between protected status and any adverse action.

In order to establish her prima face case, Plaintiff must establish the elements listed above. Plaintiff's assertion that she may somehow revive her prior gender discrimination claim through her present retaliation claim ignores that Plaintiff, through the Settlement Agreement, dismissed her prior claims with prejudice and released the District from liability regarding those claims. (Settlement Agreement §§ 7 & 8.) The Court is not persuaded that Plaintiff may simply revive those claims as new discrimination claims in this action without first establishing the prima facie elements of discrimination. As to the "nasty skank" comment, this comment was made by another teacher (who is

---

[5] Plaintiff "checked the boxes for sex and religion on the EEOC Complaint because those were the charges in the prior complaint and the retaliation was because of those charges." (Reyes Decl. ¶ 3.)

United States District Court

Northern District of California

neither a supervisor nor administrator) and was not directed at Plaintiff.  (Reyes Dep. (Vol. II) 225:18–25, 223:12–15 & 225:8–12.)  The Court agrees it is a stray remark, which is itself insufficient to establish discrimination.  *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990). When the stray remark is unrelated to the decisional process, it is insufficient to demonstrate an employer relied on illegitimate criteria to the detriment of the employee.  *Id.* (quoting *Smith v. Firestone Tire and Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989)).

Here, Plaintiff has not tied this comment to any employment decision or to any other term or condition of her employment—let alone one which materially affected her employment.  *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1060 (N.D. Cal. 2011) (granting summary judgment on age discrimination claim where plaintiff provided no evidence tying alleged discriminatory comments to any adverse action, nor evidence that comments were contemporaneous with or causally related to any adverse action taken against plaintiff).  While perhaps unprofessional and inappropriate language for a meeting (Reyes Dep. (Vol. II) 225:1–4), the comment does not transform into an adverse employment action.  Further, Plaintiff has not identified the protected class, much less addressed how similarly-situated individuals outside of the protected class were treated more favorably.  Indeed, to the extent that Plaintiff claims that any other teacher received more favorable treatment than her, Plaintiff only identifies other *female* employees, which begs the question.

With only this stray comment underlying her basis for gender discrimination, Plaintiff fails to establish her prima face case.  Accordingly, the Court need not reach the next step of the *McDonnell-Douglas* burden-shifting framework.  The Court **GRANTS** Defendant's Motion for Summary Judgment on the first and fifth claims for gender discrimination.

### 3. Religious Discrimination: Claims Two and Six

Plaintiff brings suit for religious discrimination based solely on the following remarks: in January 2011, an employee "yelled explicatives" and "used religious references that [Plaintiff] found offensive."  (RSS No. 18–19; Reyes Dep. (Vol. II) 220:17–221:22.)  Specifically, a teacher yelled "goddamn it" and the F-word "several times."  (Reyes Dep. (Vol. II) 222:1–223:5 (employee making the comments was not an administrator or supervisor and did apologize); RSS No. 20.) Plaintiff also testified that the president of her union, Dennis Kelly ("Kelly"), stated that "several

years ago, we had a problem with Catholic school teachers coming into the public schools and just trying to get their five years in.  And they weren't doing a good job, and the principals weren't doing anything about it.  So we had to do something about it as teachers."  (RSS No. 21; *see* Reyes Dep. (Vol. II) 308:15–309:18.)  Finally, Plaintiff testified that principal Zapien made several comments about his negative experience in Catholic school.  (RSS No. 22.)

Defendant argues that Plaintiff cannot establish a prima face case of religious discrimination because she was not subject to an adverse action based on religion nor can she show any connection between her protected status as a Catholic and any adverse action.  (Mot. at 13–14.)  Plaintiff's argument with regard to religious discrimination is identical to that of gender.  (Opp. at 8 (joint section responding to "Gender and Religion Discrimination").)

Again, Plaintiff must establish the prima facie elements of a current discrimination and may not simply rely on the fact that her Prior Lawsuit had religious discrimination claims.  As to the substance of the claims, the "goddamn it" and F-word comments (as with the "nasty skank" comment) were made by the same teacher, who is not a supervisor or administrator and did not direct them at Plaintiff.  (RSS No. 19.)  While Zapien did not apologize that Plaintiff felt uncomfortable during the meeting (RSS No. 18), feeling uncomfortable is not an adverse employment action.  In addition, Plaintiff has failed to establish that the "goddamn it" or F-word comments were connected to any decision that affected the terms or conditions of her employment, materially or otherwise.  *Cozzi*, 787 F. Supp. 2d at 1060.

With regard to union president Kelly's statements regarding Catholic school teachers' performance, he is not an employee of the District.  (Mot. at 13.)  Regardless, this comment is a stray remark by, at best, a co-worker.  As to Zapien's comments regarding his school experiences, no evidence is presented from which the Court can infer that he made these comments about Catholics or Catholicism generally, or that he directed any statements regarding Catholic schools to Plaintiff. (Reyes Dep. (Vol. III) 374:20–375:5; RSS No. 22.)  Further, Plaintiff presents no evidence that Kelly's comment regarding the performance of Catholic school teachers or Zapien's comments regarding his *personal* experiences in school were directed to Plaintiff because she is Catholic.  She has identified no connection between these comments and any adverse action.  Plaintiff has also failed

to address how similarly-situated non-Catholic teachers were treated more favorably.  Consequently, these stray remarks are not actionable as a matter of law.

Plaintiff thus fails to establish her prima facie case of religious discrimination.  The Court need not reach the next step of the *McDonnell-Douglas* burden-shifting framework.  The Court **GRANTS** Defendant's Motion for Summary Judgment on the second and sixth claims for discrimination based on religion.

### 4.    Age Discrimination: Claim Four

To establish the first prima facie element of age discrimination under FEHA, a plaintiff must show she was at least 40 years old.  *Coleman,* 232 F.3d at 1281; *Cozzi*, 787 F. Supp. 2d at 1057. Plaintiff turned 40 years old in 2010.[6]  (RSS No. 26.)  Plaintiff's age discrimination claim is based on two categories of acts: (i) comments from Zapien; and (ii) her referral to a Peer Assistance and Review ("PAR") Program.  (Opp. at 9–10.)  As to principal Zapien's comments, Plaintiff testified that **in 2007**, Zapien hired one or two people because he wanted to get some "young, energetic, positive people into the school" and that the school "need[ed] some positive energy . . . young energetic energy."  (RSS No. 24.)  Then, in a January 2011 meeting, Zapien stated: "you don't get to stay in a job for 25 years, and it's just going to be the same.  Some people need to move on."  (RSS No. 25.)  In addition, Plaintiff claims Zapien referred to older teachers who stay at a job for long periods of time and do not leave.  (*Id.*)  Plaintiff admitted that Zapien was not speaking directly to her, but that she felt he may be directing the statements to her even though she was only 41.  (*Id.*)  She also believed that he attributed an anonymous letter discussed at that meeting to her even though he did nothing specific to suggest that conclusion.  (*Id.*)

Finally, Plaintiff also identifies as a basis for her age discrimination claim that she was referred to the PAR Program in 2011.  (RSS No. 39.)  The PAR Program is an agreed-upon intervention program described in the contract between the teachers' union and the District.  (RSS No.

---

[6] Although not technically an objection to evidence, Plaintiff notes that the District has published Plaintiff's complete date of birth in numerous documents in violation of Fed. R. Civ. P. 5.2.  (*See* Plaintiff's Objections to Evidence re Defendant's Motion for Summary Judgment ("Plaintiff's Objections to Evidence") (Dkt. No. 124).)  The District is hereby **ORDERED** to file redacted copies of those documents.  (*See* Section IV.)

8.)[7]  A teacher can be referred to PAR through the Union Building Committee ("UBC"), which is the mechanism by which concerned teachers can submit referrals about other teachers.  (RSS No. 9.)  Voluntary PAR is a program that provides additional assistance to teachers that have received satisfactory reviews.  (RSS No. 10.)  The program provides teacher support and development, and lasts for a period of no more than two months.  (*Id.*)  Under voluntary PAR, the "coach" paired with the teacher does not make an assessment of the teacher; it is solely a coaching relationship.  (RSS No. 11.)

Jessica Hobbs-Alvarez  ("Hobbs-Alvarez") is a teacher at Hillcrest and was the UBC representative for Hillcrest in 2011.  (RSS Nos. 12–13.)  Her responsibilities included facilitating recommendations to the PAR Program.  (RSS No. 14.)  Lisa Levin ("Levin") served as a PAR coach for three years.  (RSS No. 15.)   In or before February 2011, Levin observed Plaintiff in her classroom managing her students.  (Deposition of Lisa Levin ("Levin Dep.") 32:23–33:2, attached as Ex. F to Raymond Decl. (Dkt. No. 115-5); *see also* Rogers Decl., Ex. 11 (Dkt. No. 135-2) (Plaintiff's excerpts of Levin Dep.).)  Levin observed a lack of structure, routines, and procedures.  (*Id.* 33:7–11.)  Further, she observed that the classroom environment was disheveled, in disarray, and/or unsafe.  (*Id.* 33:12–34:18 & 39:20–40:20.)  After observing Plaintiff's classroom, Levin prepared a "Statement of Concern" regarding Plaintiff without consulting anyone else.  (*Id.* 37:1–23, 39:12–16, 48:13–22 & Ex. 2 to Levin Dep.; RSS No. 42.)  Levin believed Plaintiff needed additional support with her classroom environment and management.  (*Id.* 37:12–17 & 38:3–10.)  She understood that her Statement of Concern had the effect of asking for a PAR referral, but did not believe that any "huge stigma" attached or that teachers were more vulnerable to termination.  Instead, she "felt like PAR was the best vehicle to get [Reyes] that intensive continuous support."  (*Id.* 38:12–25 & 47:15–48:4.)

---

[7] The Contract between San Francisco Unified School District and United Educators of San Francisco ("Union Contract") provides that: "[i]f a teacher believes that a colleague is in need of the intervention process, s/he may discuss these concerns with the UESF Building Representative.  The Building Representative may relay these concerns to the principal.  If the Building Representative discusses these concerns with the principal and after one month the principal does not request an investigation for intervention, the building representative may submit the concerns to one of the Panel Co-Chairs.  The PAR Co-Chairs may place such a teacher in the Intervention Program following the procedure described above."  (Union Contract § 41.1.4.3, attached as Ex. 54 to Reyes Dep. (Dkt. No. 132) at Ex. 5 to Rogers Decl.)

United States District Court

Northern District of California

1    On or about February 24, 2011, union representative Hobbs-Alvarez spoke with Zapien about

2    Levin's Statement of Concern.  (Zapien Dep. (Vol. I) 63:9–64:5 & Exs. 2 & 3.)[8]  As principal, the

3    Union Contract allowed Zapien to investigate the Statement of Concern, which he did by observing

4    Plaintiff's classroom himself.  (*Id.* 64:6–8 & 64:18–65:11; RSS No. 44; Deposition of Mary Richards

5    7:24–8:12 ("the principal would have to act on that referral within a month"), attached as Ex. K to

6    Raymond Decl. (Dkt. No. 115-10).)  On or about March 1, 2011, Zapien prepared a memorandum in

7    response which agreed with the referral.  (Zapien Dep., Ex. 3.)  Zapien was not involved in the PAR

8    process in any way after writing this memorandum.  (RSS Nos. 46–47.)

9    Plaintiff had multiple conversations with union president Kelly regarding the PAR referral and

10   reached an agreement through her union that she would not be part of the involuntary PAR process;

11   instead, she accepted the voluntary PAR process.  (RSS No. 47.)  Nevertheless, Plaintiff brings an age

12   discrimination claim because she claims that both PAR co-chair and HR Executive Director, Mary

13   Richards ("Richards"), and Kelly "admitted that the PAR program is generally for older teachers."

14   (Opp. at 10; Reyes Dep. (Vol. II) 228:15–23.)

15   In opposition to this claim, Defendant counters that the Court may not consider alleged

16   comments made prior to when Plaintiff was 40 (*i.e.*, the 2007 comments made by Zapien regarding

17   getting "young" or "energetic" employees) and that these comments also occurred more than one year

18   prior to when her Charge was filed.  (Mot. at 14–15.)  Defendant further contends that these

19   comments and any other alleged age comments do not constitute adverse actions because Plaintiff did

20   not suffer a materially adverse change in employment terms.  (Mot. at 15 (describing the comments as

21   addressing complacence in the workplace).)  In addition, Defendant argues the PAR referral is not an

22   adverse action because (i) Plaintiff volunteered for the Program after discussions with her union, (ii) it

23   did not materially change the terms of her employment, and (iii) there is no evidence that the referral

24   ───────────────

25   [8] The parties have separately attached excerpts of each volume of Zapien's deposition transcripts in support of
     their briefs.  (Raymond Decl. at Exs. N (Vol. I) & O (Vol. II) (Dkt. Nos. 115-13–115-14, respectively); *see*

26   Rogers Decl. at Ex. 6, jointly combining Vol. I & II (Dkt. No. 134); *see also* Declaration of Dylan B. Carp in
     Support of Defendant San Francisco Unified School District's Reply in Support of Its Motion for Summary

27   Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint at Ex. A (Dkt. No. 139-4).)
     For ease of reference in this Order, the Court will refer to Plaintiff's deposition transcripts as "Zapien Dep.

28   (Vol. #) page:line" or "Zapien Dep., Ex. #."

itself had anything to do with age.  (Mot. at 15–16.)  As to the reasons that Zapien wrote his letter of

agreement to PAR, Defendant explains that "every action Richard Zapien took regarding Margaret

Reyes was motivated by his sound discretion as Principal that it would benefit the operations of

Hillcrest and the safety and educational experience of Hillcrest's students."  (Mot. at 16–17;

Declaration of Richard Zapien in Support of Defendant San Francisco Unified School District's

Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint

("Zapien Decl.") (Dkt. No. 115-1) ¶ 6; RSS No. 32.)

Plaintiff initially responds the 2007 statements are admissible to prove bias against older

teachers and admits that "the remarks [do not] constitute adverse employment action.  They are

evidence of Mr. Zapien's intent" and harassing conduct generally toward Plaintiff which itself

affected the terms, conditions, and privileges of Plaintiff's employment.  (Opp. at 9–10.)  As a

preliminary matter, Defendant's cited authorities do not support disregarding the 2007 comments

entirely.  They merely reflect the requirement that a plaintiff be 40 years old.  (Mot. at 14); *see, e.g.*,

*Stevenson v. Superior Court*, 16 Cal. 4th 880, 928 n.6 (1997) ("FEHA's age discrimination

prohibition applies only to employees 'over the age of 40.'") (quoting Cal. Gov't Code § 12941(a)).

A plaintiff must show that *at the time of the adverse action* he or she was 40 years of age or older.

*Hersant v. Dep't of Social Services*, 57 Cal. App. 4th 997, 1003 (Cal. Ct. App. 1997).  The Court will

consider the 2007 comments to the extent that they consist of evidence from which the Court may

infer that any adverse employment actions taken against Plaintiff were based on age.

As to Zapien's remarks themselves, there is no evidence that the 2007 comments regarding

young, energetic teachers were directed to Plaintiff.  Plaintiff's subjective belief that Zapien may have

been referring to her in 2007 is insufficient to create a link to the 2011 PAR referral.[9]  (*See* RSS No.

---

[9] In *Cozzi*, the court analyzed age discrimination claims based, in part, on comments by the alleged
discriminator about wanting "fresh faces" in the department and that "older employees are set in their ways,
and it would be good to have younger people in the department."  787 F. Supp. 2d at 1058.  Plaintiff argued
that these comments showed an "obvious favoritism" toward younger employees and that a reasonable jury
could conclude these were evidence of discriminatory intent.  *Id.* at 1059.  The court, however, found that
plaintiff had provided no evidence suggesting that the alleged discriminator or anyone referring to wanting
"younger" employees.  To the extent that the word "young" may have been used, the court held that it was a
stray remark insufficient to provide evidence of discrimination.  *Id.*  The *Cozzi* court also noted that the Ninth
Circuit had held that comments such as "we don't necessarily like grey hair," "old timers," and "old-boy
network" did not to support an inference of discrimination.  *Id.* at 1059 (citing three Ninth Circuit cases).

92.)  Further, Plaintiff's memory that Richards and Kelly told her that PAR was for older teachers is not evidence from which the Court can determine that similarly-situated teachers under 40 are treated more favorably with respect to PAR.  No evidence has been presented that Plaintiff or other over 40 teachers suffered based on younger, energetic teachers being hired, or that they were consistently referred to PAR to their detriment.  Likewise, it is undisputed that Levin herself made the referral, did not consult Zapien prior to submitting the request, did not factor age into her motivation, and thought that PAR was a tremendous resource.  (Levin Dep. 37:21–23, 38:15–25, 39:12–16, 47:15–48:4 & 48:13–22; *see* RSS Nos. 46–47.)  Plaintiff has failed to establish a prima facie case.

*Even if* the Court drew all inferences in Plaintiff's favor and found that she established her prima face case, her claim would nonetheless fail under the *McDonnell Douglas* burden-shifting analysis.  Defendant has articulated a legitimate, non-discriminatory reason for the alleged adverse employment actions by Zapien in that he exercised his discretion as principal and believed his actions would benefit the operations of Hillcrest and the safety and educational experience of Hillcrest's students.  (Zapien Decl. ¶ 6.)  Indeed, this explanation is consistent with Levin's Statement of Concern, which explicitly indicated that Plaintiff's classroom was not safe.  (Levin Dep., Ex. 2.)  Plaintiff must demonstrate these reasons are pretext for discrimination by showing that the non-discriminatory reasons are unworthy of credence.  *Aragon*, 292 F.3d at 658–59; *Guz*, 24 Cal. 4th at 358 ("[T]he ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.").  Rather than pointing to "specific" or "substantial" evidence showing that the Zapien's conduct was motivated by her age (*see Godwin*, 150 F.3d at 1222), Plaintiff merely argues her disagreement.  (Opp. at 10.)  Plaintiff's unsubstantiated conclusions are insufficient to rebut Defendant's proffered explanation.  *Cornwell*, 439 F.3d at 1028 n.6 (merely denying the credibility of defendant's proffered reason for the challenged employment action is insufficient to show pretext); *Guz*, 24 Cal. 4th at 358 (affirming grant of summary judgment where employee failed to establish pretext).

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on the fourth claim for age discrimination.

**C.      Retaliation Claims: Claims Three and Seven**

**1.      Legal Standard for Retaliation Claims Under Title VII and FEHA**

A plaintiff can establish a prima facie case of retaliation by showing that: (1) she engaged in a protected activity; (2) she suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Yanowitz*, 36 Cal. 4th at 1042. An employee has engaged in a protected activity if she opposed discrimination or other conduct made unlawful by Title VII or FEHA. 42 U.S.C. § 2000e-3(a); Cal. Gov. Code § 12940(h). Under FEHA, an adverse employment action materially affects the terms, conditions, or privileges of employment. *Yanowitz*, 36 Cal. 4th at 1050–52. "[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." *Id.* at 1052.

The parties agree that a Title VII retaliation claim requires a plaintiff to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted). With respect to material adversity, the Supreme Court stated in *Burlington Northern* that "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id.* at 68 (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998).) In determining whether a *reasonable* employee would be dissuaded from exercising protected rights, the court must judge such employee's reactions using an objective standard. *Burlington Northern*, 548 U.S. at 68. A court must further "separate significant from trivial harms." *Id.*; *see Yanowitz*, 36 Cal. 4th at 1054 (under FEHA, "[m]inor or relatively trivial adverse actions" are not actionable). Finally, "complaints about personal grievances or vague or conclusory remarks that fail to put employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." *Yanowitz*, 36 Cal. 4th at 1047.

United States District Court

Northern District of California

### 2.   Summary of Parties' Positions

Defendant first contends that certain alleged conduct from 2008 cannot be considered adverse actions because they predate her Charge by nearly three years.  (Mot. at 19.)  It next argues that none of the numerous alleged adverse actions were materially adverse under FEHA, nor would the actions have deterred a reasonable employee from engaging in protected activity.  (*Id.* at 20–21.)  As with the other claims, the District reiterates that Plaintiff cannot establish a causal link between her protected activity and the alleged adverse actions because Zapien had no knowledge of the Prior Lawsuit and there is no evidence that HR Executive Director Sagastume or the District took any action with a retaliatory motive.  (*Id.* at 21.)  Finally, the District notes that some of the actions complained of resulted from mistakes within the District, and that Plaintiff cannot establish that these reasons were a pretext.  (*Id.* at 22.)

Plaintiff disagrees.  (Opp. at 2, 3, 9 n.5 & 10.)  She identifies a number of allegedly adverse employment actions that are not time-barred.  With respect to the District through HR Director Sagastume, she refers to the District's failure to perform under the Settlement Agreement and the changing of the job posting for the Lawton Alternative School after Plaintiff got the job.  (Opp. at 2–3.)  With respect to Zapien, Plaintiff claims that he was continually hostile, refused to do things for Plaintiff that he would for other teachers, gave her a "poor" evaluation, and referred her to PAR. (Opp. at 11.)  She also asserts that a causal link between Zapien's adverse employment actions and her protected activity exists.  Recognizing that she must establish that Zapien knew of Plaintiff's Prior Lawsuit, Plaintiff discusses at length why Zapien's denial of knowledge of the Prior Lawsuit should not be credited.  (Opp. at 3–5; *see id.* at 9 n.5 ("Plaintiff has to prove that Mr. Zapien had knowledge of her prior Complaint to prove discriminatory intent.").)

The Court first examines the issue of whether Plaintiff suffered an adverse employment decision based on Zapien's conduct.

United States District Court

Northern District of California

3.        **Alleged Adverse Employment Actions**

      a.        **Zapien's Alleged Adverse Employment Actions**

      Plaintiff's claims with respect to Zapien all relate to the classroom environment. Plaintiff asserts that PAR materially affected the terms and conditions of her employment and resulted in her cancelling a certification program which cost her over $5,000. (Opp. at 5.)

      The Court discussed at length the PAR referral in the age discrimination section. (*See* Section II.B.4.) Plaintiff testified that she voluntarily agreed to attend PAR, which lasted for a couple of months. (Reyes Dep. (Vol. I) 102:13–17 & 106:21–25.)[10] She is no longer in the program. She also testified that she benefitted from the program and has applied her learning to the classroom. (*Id.* 106:5–20.) Plaintiff was not transferred because of her participation, nor did she lose any benefits, pay, or seniority as a result. (Reyes Dep. (Vol. II.) 135:8–25.) Plaintiff testified that she felt that she "lost pay in a roundabout way" because she had to take time off because of PAR, but now asserts that she lost "the opportunity to pursue certification [which] resulted in substantial monetary loss (over $5,000)." (RSS Nos. 50 & 51.) While this loss was not identified during her deposition, Plaintiff fails to establish that it materially affected the terms or conditions of her employment.[11] *Yanowitz*, 36 Cal. 4th at 1050–52. Plaintiff has not established that her participation in PAR was materially adverse

---

[10] Plaintiff participated in a total of five meetings for PAR, between one and two hours. (RSS No. 49; Reyes Dep. (Vol. II) 137:4–21.) Plaintiff states in her declaration that her participation in the PAR process took over 100 hours. (Reyes Decl. ¶ 9.) Defendant asserts that this statement must be disregarded as a "sham" declaration and that Plaintiff cannot create a triable issue of fact by contradicting her sworn deposition testimony. (*See* RSS No. 49.) The Court agrees that Plaintiff seems to be contradicting her deposition testimony to create a triable issue of fact. While Plaintiff did state during her deposition that PAR took "much more than five to ten hours," she failed to ever quantify how many hours she invested. (Reyes Dep. (Vol. 137:4–140:23).) No explanation provided by Plaintiff regarding her participation in PAR brings the total number of hours anywhere near 100. Moreover, she referred multiple times to stress caused by PAR, but stress cannot be said to have materially affected the terms or conditions of her employment. (*Id.*)

[11] Plaintiff cannot assert that certification was somehow required for her employment because she remains employed to this day. Without any explanation of the effect of certification on the terms and conditions of Plaintiff's employment, the Court cannot determine the loss of certification was materially adverse. (*See* Reyes Dep. (Vol. III) 344:19–346:7 (the class was not required to submit a portfolio to national board).) This remains true regardless of the fact that Richards and Kelly may have "strongly suggested" to Plaintiff that she not pursue the certification or that she elected not to pursue it. (RSS No. 51.)

under FEHA or Title VII, nor that her referral was causally linked to her Prior Lawsuit.  As such, her retaliation claim cannot proceed on this basis.

Next, Plaintiff identifies a "satisfactory" performance review in May 2008 from Zapien as another materially adverse act of retaliation.  Plaintiff received a "highly satisfactory" performance review by Zapien for the 2007–2008 school year.  (RSS No. 59.)  Plaintiff also cites a second "satisfactory" performance review for the 2009–2010 school year from assistant principal Katerina Palomares ("Palomares"), on which Zapien admits he "most likely" gave input.  (Reyes Dep., Ex. 7; Zapien Dep. 132:3–24.)  By contrast, Plaintiff also received two "Highly Satisfactory" ratings on two formal classroom observations by evaluators other than Zapien or Palomares for the first and second semesters of the 2009–2010 school year.  (Opp. at 12; Reyes Dep., Ex. 7.)

Plaintiff's "satisfactory" ranking is not a materially adverse action under FEHA or Title VII.  "A statutory claim for retaliation may be predicated on an unfavorable evaluation only where the employer wrongfully uses the negative evaluation to substantially and materially change the terms and conditions of employment."  *Pinero v. Specialty Restaurants Corp.*, 130 Cal. App. 4th 635, 646 (Cal. Ct. App. 2005) (internal citations and quotations omitted) (no adverse action where plaintiff admitted that job responsibilities, title, salary, bonus, and benefits did not change).  "[A]n employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact." *Bradley*, 104 F.3d at 270; *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 816 (Cal. Ct. App. 1999) (citing *Bradley*).  Plaintiff did not lose salary or benefits and was not reassigned involuntarily because of either "satisfactory" evaluation.  (RSS No. 63; *see* Reyes Dep. (Vol. II) 171:15–172:19 (neither Palomares nor Zapien ever told her that her evaluation was based on her Prior Lawsuit).)

Finally, Plaintiff has identified problems either in her working relationship with Zapien or in the District: for example, she asserts that Zapien refused to repair leaks in her classroom ceiling and that other classrooms were fixed more quickly.  (RSS No. 77.)  She has no information, however, why other rooms may have been fixed more quickly (if at all) or whether Zapien issued repair orders.  (*Id.*)  Plaintiff asserts that Zapien refused to assist Plaintiff in getting water bottles to her classroom, but that she watched him help three other female teachers with water bottles while telling her to use parent

1   volunteers.  (RSS No. 76; Reyes Dep. (Vol. II) 297:5–13.)  Plaintiff also claims that Zapien refused to

2   cover Plaintiff for her bathroom breaks on rainy days, referring her to her contract.  (RSS No. 78.)

3   Plaintiff spoke to the union about the bathroom breaks, but the union did not resolve it.  (*Id.*)  "[C]old

4   or hostile behavior in itself is insufficient to constitute an adverse action for purposes of a retaliation

5   claim."  *Cozzi*, 787 F. Supp. 2d 1047; *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 803 (9th Cir.

6   2003) ("Mere ostracism in the workplace is not grounds for a retaliation claim.").

7           In summary, the actions supported by evidence in the record, at most, highlight Plaintiff's

8   strained relationship with Zapien.  None of the actions of which Plaintiff complains constitute an

9   actionable or material employment decision and on this basis alone summary judgment on this claim

10  as to Zapien is warranted.[12]

11                      **b.      Alleged Acts of Retaliation by Sagastume**

12          Plaintiff claims that the District (primarily through Sagastume) took specific

13  actions against her in retaliation for her Prior Lawsuit.  The first set of acts arises out of the Settlement

14  Agreement and the second out of her move to the Lawton Alternative School.

15                      **i.      Settlement Agreement**

16          Plaintiff claims the District retaliated against her with respect to the

17  Settlement Agreement in three ways: (1) refusing to follow through on certain terms of the Settlement

18  Agreement; (2) referring to the Settlement Agreement in PeopleSoft, which was accessible to District

19  administrators, including Zapien; and (3) broadcasting the fact of her Settlement Agreement and Prior

20  Lawsuit through documents in her personnel file and through board minutes that announced the

21  approval of settlement in the Prior Lawsuit.

22

23  _____

24  [12] Plaintiff devotes significant argument to the issue of whether Zapien knew of the Prior Lawsuit.  (Opp. at 3–
    5; *id.* at 9 n.5 (claiming that she must prove Zapien's knowledge of the Prior Lawsuit to prove discriminatory

25  intent).)  The Court agrees that Plaintiff calls into question whether Zapien knew of the Prior Lawsuit.  (*See,
    e.g.*, RSS Nos. 4, 69, 70; Zapien Dep. (Vol. I) 71:5–10, 73:12–79:15, 148:8–149:11; Zapien Dep. (Vol. II)

26  231:1–232:15, 234–238, 265:17–266:3; Reyes Dep. (Vol. I) 90:20–91:4; Reyes Dep. (Vol. II) 209:17–210:16;
    Reyes Decl., Ex. 2; Deposition of Jolie Wineroth, attached as Ex. 7 to Rogers Decl. (Dkt. No. 134-1) and

27  Raymond Decl., Ex. M (Dkt. No. 115-12) at 9:1–12:14; Deposition of June Dayao, attached as Ex. 9 to Rogers
    Decl. (Dkt. No. 135) at 14:8–15:3, 15:8–23; Deposition of Martin Kwon, attached as Ex. 10 to Rogers Decl.

28  (Dkt. No. 135-1) at 11:3–12:16.)  Nevertheless, the failure to identify an actionable adverse employment
    decision is dispositive.

United States District Court

Northern District of California

First, pursuant to the Settlement Agreement, the District was required to grant Plaintiff seven additional days of sick leave.  (Settlement Agreement § 3.)  Although silent regarding the timing, Sagastume testified that she emailed the benefits manager to request that the sick days be credited.  (Deposition of Angie Sagastume ("Sagastume Dep.") 35:8–14, attached as Ex. 4 to Rogers Decl. (Dkt. No. 128-4); *see also* Ex. L to Raymond Decl. (Dkt. No. 115-11) (Defendant's excerpts of Sagastume Dep.); *see id.* 35:19–36:2 (made request a "long time ago" but does not believe it was in the last year).)  She does not know why the adjustment took so long to complete and does not know who was responsible for adjusting it within the benefits department.  (*Id.* 67:13–20.)  Sagastume also testified that she received a request from Mike Quinn regarding the seniority and sick day issue in 2010, which prompted her to find out where those changes would have been handled.  (*Id.* 30:1–6, 72:24–73:25; *see* Reyes Decl., Ex. 2.)  The email sent by attorney Quinn to attorney Turman and Sagastume in June 2010 made negative comments about Plaintiff amidst the discussion of the sick leave award, including that while Plaintiff was still employed, she was "making life hell in another school."  (Reyes Decl., Ex. 2.)

After the pending lawsuit was filed, David George, Director of Risk Management for the District ("George"), looked into the sick leave days.  (Declaration of David George in Support of Defendant San Francisco Unified School District's Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Plaintiff's Complaint ("George Decl.") ¶ 2, attached as Ex. B to Raymond Decl. (Dkt. No. 115-1).)  Having discovered that the request had been sent several times to the benefits department, he personally shepherded the request to the payroll department for completion.  (*Id.*)[13]

Next, Plaintiff asserts that Sagastume published the fact of the Settlement in PeopleSoft, which was accessible by school administrators, including Zapien.  (Opp. at 2; Sagastume Dep. 63:9–64:14 & Ex. 8.)  Specifically, when Plaintiff's seniority date was changed in PeopleSoft, Sagastume instructed

---

[13] The Court sustains the majority of Plaintiff's objections to the George Decl. as lacking foundation and personal knowledge.  (*See* Plaintiff's Objections to Evidence.)  The Court considers background statements only to the extent it bears on George's state of mind and not for the truth of the statements.  The Court will consider George's statement regarding the existence of Board minutes on the District's website, which is not disputed by Plaintiff, but not his statements regarding the duties and protocols of the Board or District, which lack foundation.

her clerk to include a comment in system that it was being done "per legal settlement agreement." (*Id.*; RSS No. 69 & 70.)

Lastly, Plaintiff argues that the fact of her Settlement Agreement and Prior Lawsuit were effectively broadcasted to Zapien and other employees. Specifically, information in her personnel file referred to the Settlement Agreement and there were other ways that employees could have found out—*e.g.*, on the internet through board minutes that announced the approval of settlement in *Burns v. SFUSD*. (*See* RSS Nos. 68 & 75; Reyes Dep. (Vol. III) 411:18–413:4; Opp. at 4 & 12.) As to the board minutes, Plaintiff disputes that the Ralph M. Brown Act, which requires the board to announce actions taken to settle pending litigation during closed sessions, actually requires that Plaintiff's name be published. (RSS No. 75.) Defendant disputes Plaintiff's arguments regarding its legal requirements and notes the minutes are archived on the District's website per its normal processes. (*See* George Decl. ¶ 4.)

### ii.    Position at Lawton Alternative School

The next set of alleged acts of retaliation relate to the position Plaintiff took at Lawton following Hillcrest. (Opp. at 2.) Specifically, Plaintiff sought a position at Lawton based on a job posting and claims that the District changed it to a temporary position "after [she] got the job." (Reyes Dep. (Vol. II) 177:6–179:19 & Ex. 10.) Other postings were clearly marked temporary; the one at issue was not. Neither Sagastume nor her department posted the position (Sagastume Dep. 45:20–49:16 & Exs. 4 & 5), and no evidence to the contrary exists. Sagastume believes that the principal of Lawton or her clerk posted the job. (*Id.*) Sagastume sent Plaintiff an assignment letter that clearly stated that the Lawton position was for one year only, with no bumping rights. (Sagastume Dep. 51:3–52:1 & Ex. 10.) When Sagastume sent Plaintiff this letter, she did not know that the position had been advertised as a permanent position. (*Id.* 68:19–22 & Ex. 4.) At deposition, Sagastume admitted that job posting should have stated it was for one-year and that it was incorrectly posted. (*Id.* 47:4–12 & 51:3–7.)

Upon receiving the assignment letter for the Lawton position, the principal of Lawton (Ms. Dobrus) invited Plaintiff to visit the school, which she did. (Reyes Dep. (Vol. II) 178:4–20.) Plaintiff then understood it was a one-year position and had called the union and Sagastume. (*Id.*) She did not

24

receive a call back from Sagastume, but her union told her that she could file a grievance; she did not. (*Id.* 184:7–22.)  Sagastume does not believe that Plaintiff contacted her with any questions regarding the Lawton position.  (Sagastume Dep. 51:19–52:1.)  Sagastume claims that she could have looked at other positions for Plaintiff that were not temporary and had not been filled.  (*Id.*)  But, Plaintiff counters that the window for that year was effectively closed.  (Reyes Dep. (Vol. II) 184:7–15.)

Taking these facts in the light most favorable to Plaintiff (and considering the factual dispute over whether Sagastume returned Plaintiff's phone call), there is a triable issue over whether the District sought to limit the length of her position based on her history, including the Prior Lawsuit. To the extent that the negative comment regarding Plaintiff arose in the context of awarding her sick days under the Settlement Agreement, the Court further finds a triable issue of fact exists regarding the motivations and timing of that award.  Because triable issues of fact exist as to the District's conduct related to the Settlement Agreement and Lawton position, summary judgment is **DENIED** as to the actions set forth in Section II.C.3.b.

### c.    Counterclaim

Lastly, Plaintiff asserts that Defendant's filing of the Counterclaim itself is a retaliatory action.  Defendant counters that, as a matter of law, a compulsory counterclaim cannot be retaliatory.  (Reply at 10.)  Plaintiff fails to provide *any evidence* to support her proposition.  (RSS No. 29.)[14]  Moreover, in the context of the burden-shifting framework, the Court views Defendant's allegations that the basis of the lawsuit was *Rogers' conduct* in speaking to a reporter (Counterclaim ¶¶ 10, 13–18) as a proffered, non-discriminatory reason explaining its action, which Plaintiff has failed to rebut.  *Cornwell*, 439 F.3d at 1028 n.6 (merely denying the credibility of defendant's proffered reason for the challenged employment action is insufficient to show pretext); *Guz*, 24 Cal. 4th at 358 (affirming grant of summary judgment where employee failed to establish pretext). Plaintiff fails to support a claim for retaliation on the basis of the Counterclaim.

---

[14] The Court further notes that the District was entitled to sue for breaches of the Settlement Agreement, just as Plaintiff was.  (Settlement Agreement § 24 ("This Agreement may be pleaded as a full and complete defense to and may be used as the basis to recover damages in any action, suit or other proceeding which may be instituted, prosecuted or attempted by any party hereto in breach thereof."); *see id.* §§ 11 & 12.)  If Plaintiff seeks to cut off the District's rights under the Settlement Agreement, she must have more than the bald assertion that the Counterclaim is retaliatory.

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the third and seventh claims for retaliation as they relate to actions by Zapien and the filing of the Counterclaim.  The Court **DENIES** the Motion for Summary Judgment as it relates to actions taken by the District through Sagastume.

### D.      Breach of Contract Claim: Eighth Claim

As to the eighth claim for breach of the Settlement Agreement, Plaintiff states that "[t]he seven days of leave have now been granted, so the Cause of Action for breach of contract can be dismissed."  (Opp. at 13.)  Plaintiff then summarily concludes that she is the "prevailing party since the seven days were not granted until February, 2012, nearly six months after the Complaint was filed."  (*Id.*)  In response, the District requests that the Court "grant summary judgment [for the District] on this claim and reserve the issue of costs for briefing on costs at the conclusion of this action."  (Reply at 15.)

Although Plaintiff seeks to dismiss this claim, Fed. R. Civ. P. 41(a) does not permit the piecemeal dismissal of one claim in a multi-claim complaint.  *Hells Canyon Preservation Council v. U.S. Forest Service*, 403 F.3d 683, 687 (9th Cir. 2005).  "[W]ithdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15, which addresses amendments to pleadings."  *Id.* Here, the parties stipulated as part of the Cross-Motions that the District granted Plaintiff the seven days of sick leave after the filing of this lawsuit.  (*See* Dkt. No. 117 at no. 9.)  Accordingly, no triable issue of fact exists for a jury to resolve as to this claim.    The Court **GRANTS** Defendant's Motion on the breach of contract claim, but reserves on the award of any costs related thereto.

### E.      Punitive Damages

In her Opposition, Plaintiff stipulates that she cannot recover punitive damages against the District.  (Opp. at 13.)  As such, the District's Motion is **GRANTED** as to the claim for punitive damages.

## III.      Cross-Motions for Summary Judgment/Adjudication on the Counterclaim

### 1.      Factual Background

The parties submitted a "[Corrected] Joint Statement of Undisputed Material Facts Re Motion for Summary Judgment With Supporting Evidence" in support of their Cross-Motions.  (Dkt. No.

United States District Court

Northern District of California

81).[15]  While there are three claims in the Counterclaim, the Cross-Motions address only the breach of contract claim.  The undisputed material facts are as follows:

The District and Counter-Defendants entered into the Settlement Agreement resolving the Prior Lawsuit on November 7, 2006.  (JS No. 1; *see* JS No. 7 (Rogers admits he is disclosee under Settlement Agreement).)  The Settlement Agreement contained a confidentiality provision, in which Counter-Defendants agreed to "hold, keep and maintain both the existence and terms of this Agreement in confidence . . . and will not aid, encourage, assist or solicit, directly or indirectly, anyone else to seek disclosure of this agreement."  (JS No. 3.)  If asked a question about the status of the dispute between the parties, Counter-Defendants were only authorized to state that "the dispute has been resolved" or "no comment" and no more, without violating the provisions of the Agreement.  (JS No. 4.)  Agreeing that proving damages for breach of the confidentiality provision would be "extremely difficult to measure," the Agreement provided that "the District shall be entitled to "$1,000.00 for each recipient who received Ms. Burns' [Margaret Reyes] or Mr. Lee's (or their disclosees [*sic*] publication) of any statement that violates this Agreement, including but not limited to paragraphs 11 and 12."  (JS No. 6 (first alteration in original).)

In addition to the confidentiality provision, the District agreed in Section 3 "to grant Margaret Reyes seven (7) additional days of sick leave."  (JS No. 8.)  "The Settlement Agreement [did] not set a deadline by which the District must grant [her] the seven (7) additional days of sick leave."  (*Id.*) The District granted Plaintiff the sick days on February 9, 2012, over five years later.  (JS No. 9.) Rogers unsuccessfully attempted to informally resolve the issue of Plaintiff's sick days by contacting Defendant's prior counsel.  (JS No. 11.)  He filed Plaintiff's Complaint on September 19, 2011 and referenced the "fact of settlement" of the Prior Lawsuit therein.  (JS Nos. 12–13.)

Thereafter, reporter Amy Crawford ("Crawford") learned of the lawsuit through her own source, not from Counter-Defendants, and contacted Rogers and with questions about the litigation.

---

[15] The parties have submitted a Joint Stipulation Regarding Evidence Submitted With Separate Statement in Support of Motions for Summary Judgment of Counterclaim.  (Dkt. No. 117.)  The parties do not dispute the authenticity of the documents attached to the Joint Separate Statement and stipulate that the facts presented therein are supported by admissible evidence.  (*Id.*)  Hereinafter, the Court will refer to material fact nos. in the Joint Statement (Dkt. No. 81) as "JS No. #" and, unless otherwise noted, references thereto include the evidence supporting the fact.

United States District Court

Northern District of California

(JS Nos. 15–16.)  Rogers did not disclose the amount of the settlement.  (JS. No. 17.)  Crawford learned of the amount from public records.  (*Id.*)  Rogers told Crawford that he could not discuss the terms of settlement because of a confidentiality clause.  (JS No. 18.)  Rogers did state that the District had not lived up to its side of the bargain and Crawford's article attributed the following to Rogers:  "there was a budget crunch.  People were getting pink slips.  She's Catholic and he made the comment that she should get a job at a Catholic [s]chool to open a spot for someone else."  (*Id.*)  Crawford does not remember whether she was aware of the settlement amount at the time of her conversation with Rogers, but Rogers testified that Crawford said she did not know the amount during the interview.  (JS No. 19.)  Crawford believes that she found the Prior Lawsuit's complaint by searching for the dates cited in the instant Complaint.  (JS No. 21.)  She believes she relied on the Prior Lawsuit to access the board minutes that stated the Prior Lawsuit was settled for $60,000.  (JS No. 22.)

Crawford's article, published in the San Francisco Examiner on September 26, 2011 ("Article") referenced Rogers' statement regarding the Settlement Agreement's confidentiality clause and the amount of the settlement.  (JS No. 23.)  The Article was published online and was viewed 1,857 times as of June 27, 2012.  (JS Nos. 24 & 26.)  The approximate circulation of the print edition for the Examiner was 75,000.  (JS No. 25.)  The content of the Article was also posted on another website.  (JS No. 27.)  The District seeks damages of $1,000 multiplied by the number of subscribers and viewers of the website Article.  (JS No. 28.)

### 2.    Breach of Contract Counterclaim

The District contends that it did not materially breach (or breach at all) the contract by its delay because the contract did not provide a deadline for when Plaintiff was to receive the sick days, time was not of the essence for this term, and it performed all of the substantial requirements under the Settlement Agreement.  (District's Cross-Motion at ECF p. 9.)  In addition, the District concedes that under Cal. Civ. Code section 1657:  "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."  (District's Response to Cross-Motion at 1.)  It further contends that "[o]nce Plaintiff demanded the seven additional sick days, the District attempted to confirm performance and/or perform immediately.  The District never refused to perform under the

contract.  It is undisputed that Plaintiff suffered no harm from the delay, and that the only reason for the delay is that it slipped through the cracks of the District's large bureaucracy."  (*Id.* at 2.)

Plaintiff argues that "[n]o reasonable jury could find that five years is a reasonable time" and the District's delay is *per se* unreasonable.  (Plaintiff's Cross-Motion at 2.)  The grant of sick days was a material provision.  (Plaintiff's Response to Cross-Motion at 2.)  Plaintiff asserts that the District cannot prove it is free of fault, and "Defendant's breach of the Settlement Agreement caused the filing of this suit which disclosed the existence of the Settlement Agreement."  (Plaintiff's Response to Cross-Motion at 3; Plaintiff's Cross-Motion at 2, 3 & 5.)  In addition, Plaintiff asserts that "[d]iscussion of the prior lawsuit is not covered by the confidentiality provisions" (Plaintiff's Cross-Motion at 4) and that confirming or "[r]estating of what is already disclosed in the public record cannot constitute a breach of the contract" (Plaintiff's Response to Cross-Motion at 2).

"A party alleging breach of contract must establish the existence of a contract, his or her own performance, the other party's breach, and damages suffered by the complaining party."  *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.*, 196 Cal. App. 4th 456, 464 (Cal. Ct. App. 2011).  "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance.  Similarly, where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired."  *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (Cal. Ct. App. 1992) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968) and *Cochran v. Ellsworth*, 126 Cal. App. 2d 429, 440–441 (Cal. Ct. App. 1954)).

The Court finds that a genuine dispute of material fact exists regarding whether District's conduct was, in fact, reasonable and whether it performed all material obligations under the Agreement.  The Court cannot determine as a matter of law that the District "attempted to confirm performance and/or perform immediately" or that the "only reason" for the delay was "that it slipped through the cracks of the District's large bureaucracy."  A dispute also exists regarding the District's failure to provide the sick days was a material breach of the Agreement that excused Plaintiff's performance.  *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (Cal. Ct. App. 2011) ("Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by

another party, is a question of fact.").  The Court cannot find that the District's conduct was *per se* unreasonable, nor that a delay of five years and three months was reasonable.  Without evidence that it performed all the conditions under the Agreement, summary judgment cannot be granted in the District's favor on the Counterclaim.  Indeed, no competent evidence has been presented by the District as to what happened between November 2006 and February 2012, and the Court is not persuaded by the District's argument that the lack of evidence tips in its favor on summary judgment.

Plaintiff likewise does not provide any evidence or authority for the conclusion that "[g]rant of the sick days was a material provision."  (Plaintiff's Response to Cross-Motion at 2.)  A reasonable juror could find either way.  Moreover, a jury should consider not only when, how, and whether the District attempted to perform by granting the sick days, but the jury is also entitled to consider the effect of Plaintiff's delay of over four years in raising the issue with the District.  In addition, it should consider whether Rogers' conduct was a breach in light of the fact that Plaintiff was required to file suit to compel compliance with the Settlement Agreement.

For the foregoing reasons, the Court hereby **DENIES** the Cross-Motions on the Counterclaim.

**IV.   CONCLUSION**

For the foregoing reasons, the Court:

- **GRANTS** the District's Motion for Summary Judgment as to the first, second, fourth, fifth, and sixth claims for discrimination;

- **GRANTS** the District's Motion as to the third and seventh claims for retaliation as they relate to conduct by Zapien and the filing of the Counterclaim;

- **DENIES** the District's Motion as to the third and seventh claims for retaliation as they relate to conduct by the District through Sagastume;

- **GRANTS** the District's Motion as to the eighth claim for breach of contract;

- **GRANTS** the District's Motion as to punitive damages;

- **DENIES** the Cross-Motions on the Counterclaim;

- **DENIES** the District's Motion for Reconsideration and **ORDERS** that Reyes Decl., Ex. 2 be publicly-filed;

- • **ORDERS** that redacted versions of any documents containing Plaintiff's date of birth be filed in compliance with Fed. R. Civ. P. 5.2.  Within five (5) days from the date of this Order, the District must file a written notice with the Court identifying any publicly-filed documents containing Plaintiff's date of birth, such that the Clerk may block public access to those documents.  Redacted versions must be filed within five (5) days from the date of that notice.

This Order terminates Dkt. Nos. 75, 80, 95 & 142.

**IT IS SO ORDERED.**

Dated: September 20, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

31